all right now we are ready in case 18 6 2 2 1 mr. Pincus if through the graciousness of your hearts any counsel in the courtroom is willing to cede additional time when you made your point the court will graciously accept it may it please the court my name is Howard Pincus from the Federal Public Defender and I represent Shane Young by the time he was interrogated by special agent Brown mr. Young had already admitted to possessing 3.5 grams of methamphetamine the agent promised mr. Young that any truthful statements he made about his drug activity would reduce the time he would serve in federal prison this assurance that there was no cost of disclosure and the mr. Young could only be better off by admitting his involvement in drug activity made his statements involuntary this court should vacate the district court suppression order order the statement suppressed and her man for further proceedings the district court recognized that mr. Young in fact made that the agent in fact made a promise of leniency the agent told mr. Young that he had spoken to the judge the judge was would charge us as either a five-year case to as much as a ten-year case and that every truthful statement he made would literally take time off what he would serve in federal prison the agent later said oh that was a misspeak I didn't mean the judge I meant the a USA is there any evidence of that or what is your position on that well the judge found that the judge didn't actually resolve that but he said regardless what he clearly said was the judge and you have to look at it from mr. Young's point of view and mr. Young who had no prior experience in the federal system would take it as a promise that he had spoken to the judge and that's clearly what the agent said whatever was in his mind was not what he said to mr. Young and in fact he said judge several times and he also said prosecutor another time so in context it's very clear that he was speaking about what the judge had agreed to regardless of what he may have meant to say we have to look at what he in fact did say the government he did get some benefit though he got three levels for he he did get he did get that he would have gotten that in any event but what the only if he admitted the 80 or the 93 grams if he had pled to the conduct but what he was looking at and whether he would have pled in the first instance was changed by what he actually admitted to during the statements during the interrogation and of course that just shows how false what the agent told him was the agent said this was a 5 to 10 year case it wasn't under any reading unless the 3.5 grams was just simple possession otherwise mr. Young was a career offender was looking at least 151 months and as it played out with the higher amount of methamphetamine 188 months at a minimum after acceptance there are confessions and then there are confessions this one what he admitted was the extra methamphetamine which was what the what the agent really wanted him to admit to without that there was just a 3.5 grams of meth it could have been just simple possession it may not even been charged well we know it was charged federally but it helped the government establish its case well the extra methamphetamine the large amount was found right by issue or he scaled defense and so forth it's pretty hard defense isn't it say the methamphetamine wasn't connected to him do we consider that as part of all of this in weighing whether his will was overcome just the obviousness of the case we did we don't and in fact when mr. young repeatedly said or what he said during the interrogation was this is in a dope dealers front yard I don't know why everybody's trying to get me to admit to it they tried to get him to admit to it at the state interrogation just before a day or two before the clearly the focus would miss what special agent Brown wanted him to admit to he gave as an example of owning to the information is something that could only benefit mr. young saying that he tossed that bag he claimed it was on a dash cam we don't know the dash cam was what was not part of the record the present support author didn't take the same view of it that the prosecutor did regardless of what that what what how the case would have played out without these statements we have to look at whether these statements were involuntary mr. mr. young assume we agree with you what relief do you see what we see we remand for resentence and not just for resentencing but for retrial on the on the one charge that he contests well we remand for further proceedings which would give him the opportunity we asked him to brief that the sentence the conviction be vacated what really should be is since the conditional guilty plea remand for further proceedings mr. young can decide whether to withdraw his guilty plea and if he does then the case would proceed without the statements about the 94 grams and all of the other statements that mr. young made in which case he would not get credit for cooperation he would stand a stiffer sentence he's aware of that that is his choice of course on remand whether he wants to proceed to trial and he filed a suppression motion seeking to have those statements suppressed and seeking to go to trial only with what the government what the the evidence that was found in the yard but he shouldn't be namely what judge Phillips notes that the evidence is evident presumption great well we don't know how strong the evidence none of the discoveries here there's there's police statements but mr. young is saying that wasn't me if you have it on dash cam video so clearly why are you trying to get me to admit it and in fact what the prior state interrogation shows is just how this the agents promises here his false promises coerced the young when without the prior without the prior promises the promises of leniency at the state interrogation mr. young as soon as he was asked about the 94 grams it was told it was on dash cam said no and I don't want to speak about it anymore here the agent made these promise of leniency confronting him about it and mr. young in an anguished state as you can see very clearly from video eventually confessed well it's right after the his will was not overborn as far as allowing them to look at his telephone well that was much later in the interrogation after he had already confessed to not only the 94 grams but other drug activity precisely and because he'd already confessed to that you would think that he would give everything up but he didn't he said you can't look at my telephone and he also in the interview before he acknowledged the 93 grams mused to himself maybe he should have an attorney there followed by some silence he knew that he could have an attorney there he didn't know but he also was under the he had been repeatedly promised that nothing's gonna hurt you and the fact that he he was may have had some residual doubt about whether the agent would follow through on on the promise doesn't mean that the promises didn't have the effect we know they had the effect from what the prior interrogation look like we know they had the effect because he spoke right after that and in fact mr. young as it turned out had good reason to doubt the promises of the agent because the agent didn't follow through on them they were false promises never never going to be followed through on as for the phone a well we said in the briefing that at that point there was discussion about broader relief that mr. young wanted not going to prison at all that actually came later in the interrogation so I apologize for that the we also indicated that it was about the statements only went to may have he may have thought they only went to his drug activity on the 16th in fact agents promise was clear as to extending to any drug involvement by mr. young but there's good reason why mr. young might not want the agents to rummage through his phone as a Supreme Court recognized in Riley cell phones these days contain a vast trove of information many of it very personal intimate we don't know what was on the phone he may have there may have been other activity didn't want the agents to know about because he was embarrassed because he feared what consequences could have for him he was very forthright throughout the interrogation as you can see about his involvement and speaking with the agents answering all their questions the government can only come up with two examples to the contrary one being about the phone the other being about when he was asked who do you sell to other than that he was very forthright with the agents and the fact that he didn't want the agents to look through his phone with all of the information that could be on the phone doesn't tell us anything about whether his will was overborn much earlier and it doesn't show that he was not exit that he was able to exercise free will as to whether to speak or not this is exactly like this court's cases in Lopez and sharp where there's no cost of disclosure as in sharp or a huge benefit as in Lopez and this court has said that those types of promises of leniency are enough to or can coerce a confession out of somebody now of course the district court besides the phone look to things like mr. Young's age is the fact that he was received Miranda warnings the fact that the questioning wasn't too long and was friendly and the fact that he had prior experience with the criminal justice system a lot of those factors are things that were also present in Lopez and sharp and did not persuade this court not to suppress the statements there and in fact some of these factors actually worked with the agents tactics if the agent is trying to the agent repeatedly said you can trust me I'm on your side he was trying to just to tell mr. young that he was the person who knew about the federal system and that mr. young could believe in him of course in that situation he's going to be friendly he's not going this is not a situation where he's trying to browbeat a confession out of mr. young the fact that he was into his position that I'm on your side and you can trust me and the fact that mr. young was in had prior experience with the state system there's no evidence that he had any prior experience with the federal system and that's what the agent used to his advantage he said look you can trust me this is how it works in federal court you may not know this it may not sound like much but this is how it works the judge is going to take time off and he emphasized it with hand gestures every truthful statement you make will literally buy down the time you will serve it in prison does the record reflect whether mr. young was offered and participated in a formal proffer by which he may get substantial assistance I don't believe that it does your honor so given all this the the miss the totality of the circumstances which is this court reviews to know how to determine whether the statements were involuntary and were coerced by the agents false promises this court should vacate the district court's contrary order order the statement suppressed as involuntary and remand for further proceedings at which point mr. young if may please the court Stephen Craig on behalf of the United States special agent Brown crossed the line the government admits it he made a promise of leniency and the district court probably found that he should not have made how do you distinguish this case from Lopez well your honor first of all different names yes your honor there are different names but the first thing I would point to is in Lopez this court made a very big point of the fact that in addition to the promises of leniency there were misstatements about the strength of the government's case there were no statements that there were no misstatements about the strength of the government's case there was a video as the PSR pointed out the video showed that he had possession of the bag before he went behind the car and then he didn't have a possession of the bag whenever he continued running away from the car there was some dispute about whether he actually threw the drug or whether you're saying if he since he's really guilty that we don't have to worry about the promise that the judge was gonna help him out well your honor it's one factor that the court considers one factor correct one factor but this court and looking at the totality of the circumstances and Lopez explained that it was both the promise of leniency and the fact that the defendant or the police lied about the strength of the case those two factors working together is what made it what overbore the will of the person but beyond that what we have here that differentiates this case from Lopez and from sharp and from the other cases where this court has held the statements were involuntary is the fact that we was going through his mind when he heard these promises of leniency we can tell because we know what he said and what he was saying what he thought that he calculated the costs we know this because before he met after the after the promise of leniency but before he made any confession he mused as judge Phillips pointed out that maybe I should get a lawyer he then used whether why do lawyer if the judge has already been talked to and has agreed that you can buy down his sentence you don't need a lawyer if you've got that kind of a deal and your honor if he truly believed that he was if he was fully going towards that promise of leniency and putting his hope in that promise of leniency then he wouldn't you know he wouldn't need to me is about a lawyer the fact that he's musing do I need a lawyer shows that he's not his will is not being overbought but in addition to that and the lawyer I think is mr. Pincus worry if we tell you not to worry we're gonna help you out we're your friends if you were to tell me not to work I your honor you were to say not to go out we're your friends your honor if you would say that at least to me whether he should worry or not I don't know if you were to say that to me I would still be nervous and I would still be presenting my case which is still be no more you're more nervous if in addition he said oh I've been to the judge too and the judge said you know it would lessen my concern it would be a factor but I wouldn't just sit on my laurels and if you were to tell me that I shouldn't worry I wouldn't say despite what judge Lucero said at the beginning that the court would be happy for me to see back as much time as I could I wouldn't just go back and sit down in the chair I would continue to make my argument because I don't want to I want to make sure that my will wouldn't be overborne by you saying don't worry do you think this fact you went to law school might enter into that decision honestly I think the fact that I went to law school might make yes I probably would make me less or more worried than less worried was the FBI agents interview here in concert with your office or was he just off on his own my understanding is he would present of the charges and we had signed off on the complaint which is how he got the arrest warrant I nobody from our office was at the interview and I'm not sure I don't I don't think we specifically told him to do that in fact in conversations I've had now this is beyond the record but in conversations I've had with the trial court a USA after as this appeal was going on it was made very clear to Special Agent Brown that what he said was not appropriate but we we agree with mr. Pinkus what what is what is the relief that we grant I I would agree with mr. Bingus that the court would vacate the conviction remanded and under the rule 11 standard he would have the option of withdrawing his plea all right thank you do you have an 851 enhancement in your back pocket I would have to say I would think there probably would be which would be 20 years mandatory minimum if convicted of the more than 50 grams of methamphetamine I believe so your honor all right what would be the consequence to criminal practice generally if we were to agree with you and agree with judge Heaton and just give this our blessing oh well shouldn't do some oratory language but go ahead and affirm Heaton's ruling well yeah I wouldn't suggest it when that's a loaded question it's intended it's a terrible practice I we're just basically saying you can go people the prosecution can the FBI can tell defendants that they've spoken to the judge and the judge is right on target he's gonna help them whoa and your honor if that was the opinion I admit that would be a very radical endorsement but this court doesn't like it would be a radical ruling from us I admit that giving this court's blessing to what special agent rounded would be a radical ruling and that I'm not here to ask this court to give its blessing and I would fully anticipate that this court might have some strong words to say about what special agent Brown said but this court and the Supreme Court have said that the use of coercive language the use of leniency is a necessary factor for an involuntary confession but it's not sufficient and while we've spoken a lot and while mr. Pincus basis his entire argument essentially on what special agent Brown said the question here is really was the statement voluntary and what this court could say is maybe in a different case where we don't know what mr. young had said then this could this case would have turned out differently but what we know is before he confessed but after the promise of leniency he asked he mused that he might be buying the farm by making this confession we know that immediately after he made the that he asked if he was ever going to get out of jail or prison this is not the oh I'm going from ten years to five years he knew that there was a cost to this disclosure he knew that instead of moving the needle from ten years to five years he moved the needle from ten years up to some unknown unknown portion but beyond that and this goes back to what one thing judge Phillips said and one thing that mr. Pincus said he knew that he could not that he could shut his mouth if what mr. Pincus has suggested that this court is correct then the truthful thing about who his supplier is the truthful thing about giving permission to his phone would have been things that he would been like oh that's gonna buy down my time but it's mr. Pincus pointed out he knew that there would have been a cost to that display he might there might have been a cost at least on the cell phone to that disclosure because there might have been crimes that the police didn't know about and beyond that the things that he gave up were things that the police knew but this court excuse me but in the end I would I would submit this court look not just at the one factor of what the the nature of the questioning but this court look at what mr. Young said but in things that mr. mr. Pincus has suggested this court just ignore are the very things that this court in the Supreme Court have said courts have to look at in determining whether or not the confession was voluntary things like the age the intelligence and the education of the defendant here mr. young is a 43 old man he had experience with the criminal justice system he had his GED there was no indication of any psychological factor that would make him more susceptible to coercion there's the length of the detention he had been detained for four days he had seen a judge twice during that period this is not an instance where courts have said where courts have said it's involuntary because he was held in communicado he was deprived of anybody else he knews that he could get his attorney he knew that he had ways out if he wanted it the full interview lasted less than an hour the court this court in the Supreme Court have said you look at the length and the nature of the interrogation interview less and less less than an hour during that there are at least a couple of times where he refused to make statements the confession here came within 11 minutes of the start of the interview the major factor that mr. Pincus has just flown by is the fact that he was advised at the very beginning of the interview of his constitutional rights this court in strong factor and finally there was no threat there were no threats of physical coercion at the end every factor with the exception of the nature of the questioning points towards voluntariness unless the court has any further question requested the interview was it him was it mr. young because it's the second time and he aborted the first one I believe I got that's not in the arrest warrant the one thing I would point out and bring that up is before the promises of coercion or the promises of leniency came up mr. young did ask if there was any way that he could help himself had mr. young met his counsel yet he appeared in court with this counsel I believe so I'm not in the record the fact that he had appointed counsel was I know that the fact whether or not he had met with him I'm not sure that's in the thank you waiting there a matter of time appreciated spring guess what happened here is this court said in sharp is that the special agent cleared the legal landmines and instead left a primrose path when when the government says there was no that he weighed the cost of disclosure he was told there was no cost of disclosure and in fact that he could only benefit from and again the one of the easiest ways to see that this statement was coerced is not only how quickly it came after the agents promises which shows that link by us but also by comparing it to the state interrogation at which presumably and there's no indication to the contrary there weren't these types of coercive and false promises of leniency there as soon as he was asked about the 94 grams of meth he said I don't want to talk and ended the interview here he's very soon after confessed and so we would ask the court to vacate the suppression order order the statement suppressed and remand for further proceedings thank you thank you mr. Peck this counselor excused the case is submitted